UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| K. MWASI, | Case No. 20-02789 EJD (PR) |
|---|---|
| Plaintiff, | |
| v. | **ORDER OF PARTIAL DISMISSAL AND OF SERVICE; DIRECTING DEFENDANT TO FILE DISPOSITIVE MOTION OR NOTICE REGARDING SUCH MOTION; INSTRUCTIONS TO CLERK** |
| SULLENGER, et al., | |
| Defendants. | |

Plaintiff, a state prisoner, filed the instant <u>pro se</u> civil rights action pursuant to 42 U.S.C. § 1983 against guards at Pelican Bay State Prison ("PBSP") where he was previously incarcerated. Dkt. No. 1. The Court dismissed several claims for failure to state a claim, and dismissed the retaliation claim with leave to amend. Dkt. No. 7. Plaintiff has filed an amended complaint. Dkt. Nos. 14, 14-1.

## DISCUSSION

### A. <u>Standard of Review</u>

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. <u>See</u> 28 U.S.C. § 1915A(a). In its review, the court must identify any

cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. See id. § 1915A(b)(1), (2). Pro se pleadings must, however, be liberally construed. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

**B.     Plaintiff's Claims**

In the original complaint, Plaintiff asserted retaliation and conspiracy under the First Amendment, violations of the Fourth and Fourteenth Amendments for the theft of a TV, and violations of his rights under the Eighth Amendment and the ADA because he is a mental health patient and hearing impaired. Dkt. No. 1; Dkt. No. 7 at 2. The Court found Plaintiff's allegations regarding retaliation were insufficient because he failed to satisfy all five elements for such a claim. Dkt. No. 7 at 3. Plaintiff was granted leave to amend to cure this deficiency. Id. Plaintiff was also advised that for conspiracy, he must name other defendants with whom the sole named Defendant Sullenger allegedly conspired to retaliate against him. Id.

The Court found Plaintiff's Fourth and Fourteenth Amendment claims related to the theft of a TV failed to state a claim because the deprivation was random and unauthorized. Id. at 4. Plaintiff was directed to seek a post-deprivation remedy in the state court. Id. The Court also found that Plaintiff's claim that the loss of the TV amounted to an Eighth Amendment deprivation failed to state a claim. Id. Lastly, the Court found Plaintiff's claim that his rights under the ADA were violated by the TV loss failed to state a claim because it did not amount to the denial of "services, programs, or activities." Id.

Plaintiff has filed an amended complaint in which he attempts to raise all the same claims as in the original, despite the Court's order stating that the only claim that was

dismissed with leave to amend was the retaliation claim. Dkt. No. 7 at 5. Plaintiff's new allegations in the amended complaint do not cure the deficiencies of those dismissed claims from the original complaint as discussed below.

### 1. Claims Dismissed For Failure to State a Claim

First with respect to the loss of property, Plaintiff claims that he requested Defendant Sullenger and other guards to return a TV to the vendor for a refund because it was erroneously ordered. Dkt. No. 14-1 at 3. Plaintiff claims Defendants "kept trying to convince Plaintiff to give up pre-existing TV for new TV, as if Plaintiff [was] 'deaf & dumb.'" Id. at 4. When Plaintiff refused, Defendant Sullenger wrote a note agreeing to return the TV for a refund "but never did." Id. Plaintiff claims when he would inquire on the matter, the guards would kick his door to intimidate. Id. Although Plaintiff asserts that the deprivation of the proper "was authorized and not random," his allegations indicate that Defendant Sullenger and others acted to deprive Plaintiff of the TV refund without authorization by the prison. Accordingly, the deprivation was unauthorized and random, and therefore fails to state a claim. See Parratt v. Taylor, 451 U.S. 527, 535-44 (1981) (state employee negligently lost prisoner's hobby kit), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Hudson v. Palmer, 468 U.S. 517, 533 (1984) (intentional destruction of inmate's property). As previously advised, Plaintiff may seek a remedy in state court for this loss of property.

With respect to the Eighth Amendment, a prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, id. (citing Wilson, 501 U.S. at 297). Plaintiff claims that the "physical and mental abuse of hearing-impaired mental patient inmate, after he was just released from mental crisis and near death after 2 weeks w/o food, was taking advantage to a severity of cruel and unusual punishment, wanton infliction of pain &

3

mental/emotional abuse." Dkt. No. 14-1 at 6. Plaintiff claims the harassment was tied to the "TV conflict" and the "TV was the vehicle of 8th [Amendment] violations." Id. Plaintiff asserts that the "TV issue alone may not amount to 8th, but all the abuse surrounding the TV games do amount to 8th violation." Id. However, Plaintiff's allegations of physical and mental abuse are conclusory and not supported by factual allegations. Rather, the allegations include incidents of verbal harassment and abuse, which fail to state a cognizable claim under § 1983. See Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997) overruled in part on other grounds by Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008); Rutledge v. Arizona Bd. of Regents, 660 F.2d 1345, 1353 (9th Cir. 1981), aff'd sub nom. Kush v. Rutledge, 460 U.S. 719 (1983); see, e.g., Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), amended 135 F.3d 1318 (9th Cir. 1998) (disrespectful and assaultive comments by prison guard not enough to implicate 8th Amendment). Furthermore, allegations of mere threats are also not cognizable under § 1983. See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (mere threat does not constitute constitutional wrong, nor do allegations that naked threat was for purpose of denying access to courts compel contrary result). Lastly, there are simply no allegations that Defendants acted with deliberate indifference, i.e., they knew that the loss of a $300 refund and continuing their verbal harassment would subject Plaintiff to a substantial risk of serious harm. Accordingly, Plaintiff fails to state an Eighth Amendment claim.

Lastly, Plaintiff again asserts an "ADA violation," alleging that "taking advantage of disability in totality of events, did inherently deprive Plaintiff of the same benefits & services of other inmates" and that "inmate w/o disability would not have suffered same treatment." Dkt. No. 14-1 at 7. Title II of the Americans with Disabilities Act of 1990, 42 U.S.C.§ 12101 et seq. ("ADA"), provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Plaintiff is simply mistaken. Even

4

assuming that Plaintiff's status as a mental health patient and being hearing impaired qualifies as a disability under the ADA, the failure of Defendants to obtain a TV refund for Plaintiff simply does not amount to the denial of "services, programs, or activities." Id. Accordingly, this claim fails to state a claim.

### 2. First Amendment – Retaliation

The only claim Plaintiff was permitted to amend was a retaliation claim. Dkt. No. 7 at 2-3. Plaintiff claims that he was in mental crisis and suffering suicidal ideation and loss of appetite, which PBSP misconstrued as a hunger strike as part of a recent series of hunger strikes. Dkt. No. 14-1 at 3. Plaintiff claims the "staff" was angered by what they "erroneously perceived as causing problems," and so they harassed him constantly. Id. Plaintiff also claims that the staff was angry at him for filings grievances (602s) and would block his efforts by intercepting and discarding them. Id. Plaintiff claims that when he inquired about the return of the TV, he never received a written confirmation and that "the guards" would kick his door to intimidate. Id. Plaintiff claims that when he gave one guard a grievance regarding the TV, another guard came to his cell "holding 602 to window shaking head, 'no' w/mean look, and a note saying, 'don't ever 602 us or R&R sign fucking paper. Your problems will get worse, asshole. You're deaf, you want blind?'" and then kicked his door again. Id. Plaintiff claims that at another time, he was removed from his cell and taken to a cage where they tried to force him to sign a paper, which he refused. Id. at 5. When he was returned to his cell, it was ransacked. Id. Plaintiff claims these actions amounted to retaliation for exercising his First Amendment rights. Id. at 6.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Plaintiff's allegations that Defendant Sullenger and

"guards" took his TV and ransacked his cell because he filed grievances and participated in a hunger strike and that his grievances were arbitrarily discarded are sufficient to state a retaliation claim.

Plaintiff has only named one specific defendant, Officer Sullenger, we well as "Does 1 to 5, guard who conspired to steal TV and violate other rights." Dkt. No. 14-1 at 2. Although the use of "John Doe" to identify a defendant is not favored in the Ninth Circuit, see Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980); Wiltsie v. Cal. Dep't of Corrections, 406 F.2d 515, 518 (9th Cir. 1968), situations may arise where the identity of alleged defendants cannot be known prior to the filing of a complaint. In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover their identities or that the complaint should be dismissed on other grounds. See Gillespie, 629 F.2d at 642; Velasquez v. Senko, 643 F. Supp. 1172, 1180 (N.D. Cal. 1986). Accordingly, Plaintiff may attempt to identify additional defendants involved in this retaliation claim through discovery, and if he is able to ascertain their names and involvement, should request leave to amend to add them to this action.

## CONCLUSION

For the reasons set forth above, the Court orders as follows:

1.     This action shall proceed on the First Amendment retaliation claim against Defendant Officer Sullenger. All other claims are **DISMISSED** for failure to state a claim for relief.

2.     The following defendant at PBSP shall be served:

   a.     **Correctional Officer Sullenger**

Service on the listed defendant(s) shall proceed under the California Department of Corrections and Rehabilitation's (CDCR) e-service program for civil rights cases from prisoners in CDCR custody. In accordance with the program, the clerk is directed to serve

on CDCR via email the following documents: the operative complaint and any attachments thereto, (Dkt. No. 1), this order of service, a CDCR Report of E-Service Waiver form and a summons.  The clerk also shall serve a copy of this order on the plaintiff.

No later than 40 days after service of this order via email on CDCR, CDCR shall provide  the court a completed CDCR Report of E-Service Waiver advising the court which defendant(s) listed in this order will be waiving service of process without the need for service by the United States Marshal Service (USMS) and which defendant(s) decline to waive service or could not be reached.  CDCR also shall provide a copy of the CDCR Report of E-Service Waiver to the California Attorney General's Office which, within 21 days, shall file with the court a waiver of service of process for the defendant(s) who are waiving service.

Upon receipt of the CDCR Report of E-Service Waiver, the clerk shall prepare for each defendant who has not waived service according to the CDCR Report of E-Service Waiver a USM-205 Form.  The clerk shall provide to the USMS the completed USM-205 forms and copies of this order, the summons and the operative complaint for service upon each defendant who has not waived service.  The clerk also shall provide to the USMS a copy of the CDCR Report of E-Service Waiver.

3.    No later than **ninety-one (91) days** from the date this order is filed, Defendants shall file a motion for summary judgment or other dispositive motion with respect to the claims in the complaint found to be cognizable above.

a.    Any motion for summary judgment shall be supported by adequate factual documentation and shall conform in all respects to Rule 56 of the Federal Rules of Civil Procedure.  Defendants are advised that summary judgment cannot be granted, nor qualified immunity found, if material facts are in dispute.  If any Defendant is of the opinion that this case cannot be resolved by summary judgment, he shall so inform the Court prior to the date the summary judgment motion is due.

b.    **In the event Defendants file a motion for summary judgment, the**

7

**Ninth Circuit has held that Plaintiff must be concurrently provided the appropriate warnings under** <u>Rand v. Rowland</u>**, 154 F.3d 952, 963 (9th Cir. 1998) (en banc).** <u>See</u> <u>Woods v. Carey</u>**, 684 F.3d 934, 940 (9th Cir. 2012).**

4.      Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants no later than **twenty-eight (28) days** from the date Defendants' motion is filed.

Plaintiff is also advised to read Rule 56 of the Federal Rules of Civil Procedure and <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986) (holding party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Plaintiff is cautioned that failure to file an opposition to Defendants' motion for summary judgment may be deemed to be a consent by Plaintiff to the granting of the motion, and granting of judgment against Plaintiff without a trial. <u>See</u> <u>Ghazali v. Moran</u>, 46 F.3d 52, 53–54 (9th Cir. 1995) (per curiam); <u>Brydges v. Lewis</u>, 18 F.3d 651, 653 (9th Cir. 1994).

5.      Defendants <u>shall</u> file a reply brief no later than **fourteen (14) days** after Plaintiff's opposition is filed.

6.      The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

7.      All communications by the Plaintiff with the Court must be served on Defendants, or Defendants' counsel once counsel has been designated, by mailing a true copy of the document to Defendants or Defendants' counsel.

8.      Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16-1 is required before the parties may conduct discovery.

9.      It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to

prosecute pursuant to Federal Rule of Civil Procedure 41(b).

10.     Extensions of time must be filed no later than the deadline sought to be extended and must be accompanied by a showing of good cause.

**IT IS SO ORDERED.**

**Dated:**   7/12/2021

EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California